UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,                              Crim. File No. 05-148 (PAM/RLE)

Plaintiff,

v.                                                     **MEMORANDUM AND ORDER**

Steven Scott Gordon,

Defendant.

_____

This matter is before the Court on Defendant's Second Motion to Dismiss the Indictment and the Government's Motion in Limine. For the reasons that follow, Defendant's Second Motion to Dismiss is denied, and the Government's Motion in Limine is granted in part and denied in part.

**BACKGROUND**

From 1999 to 2003, Defendant Steven Gordon allegedly made false statements and provided fraudulent documents when applying for several loans from First National Bank of Mahnomen. In particular, he purportedly generated fictional financial statements to depict that he and his agricultural business were financially sound when in fact both were destitute. In addition, Defendant allegedly submitted fraudulent loan applications to other commercial agricultural business lenders. After receiving the proceeds from the loans, Defendant allegedly schemed to deprive the lenders of their security by diverting accounts receivable and by forging endorsements on checks. He also defaulted on the loans.

1

In May 2002, First National Bank reported to federal law enforcement that Defendant fraudulently obtained and later defaulted on four loans, totaling approximately $1.9 million. In March 2003, the Office of the Controller of Currency ("OCC") generated a memorandum, which recommended banning Steven Tongen, a former Vice President and Senior Lender at First National Bank, from engaging in future banking activities.   The recommendation was based on Tongen's unsafe and unsound banking practices relating to loans provided to Defendant and his business.   The memorandum noted that immediately before First National Bank terminated Tongen on May 16, 2002, digital, ongoing file comments relating to Defendant disappeared.

The Indictment charges Defendant with six counts of bank fraud, five counts of false statements to a financial institution, seven counts of forged securities, and fourteen counts of money laundering.[1]   Defendant argues that First National Bank engaged in extremely outrageous conduct that warrants dismissal of the Indictment.   In particular, Defendant asserts that First National Bank intentionally destroyed the digital comments, which may have contained evidence to exculpate Defendant.   He also argues that First National Bank defrauded the Small Business Administration by providing Defendant a $950,000 loan, and colluded with Defendant's son to commit several felonies.   As an alternative ground for dismissal, Defendant argues that the Government failed to disclose exculpatory evidence and misled the grand jury

---

[1] The Court dismissed three of the money laundering counts on October 25, 2005.

to secure the Indictment.   The Government opposes the Motion to Dismiss, and seeks rulings on several evidentiary issues.

**DISCUSSION**

**A.      Motion to Dismiss the Indictment**

      1.      <u>Governmental Misconduct</u>

Defendant contends that First National Bank's destruction of documents, fraudulent acts, and aid in the commission of felonies was outrageous conduct that warrants dismissal of the Indictment.

The Court may dismiss an indictment based on egregious government conduct that rises to the level of a due process violation.   However, the constitutional protection against such outrageous conduct does not apply to purely private activity.   <u>United States v. Garlock</u>, 19 F.3d 441, 442 (8th Cir. 1994) (citations omitted).   Rather, private action can be attributed to the government for purposes of the Fourth and Fifth Amendment only if the government exercises control over the private actor.   <u>Id.</u> at 443 (citation omitted).

According to Defendant, federal regulations that require banks to report nefarious activity to law enforcement officials transforms First National Bank into a government agent. The Eighth Circuit Court of Appeals has expressly rejected such an argument.   <u>Id.</u> ("the mere fact that [a bank] engages in a heavily regulated business does not create the required nexus"); <u>see also Morast v. Lance</u>, 807 F.2d 926, 929 (11th Cir. 1987) (although heavily regulated,

"national banks are not so much the 'instrumentalities' of the federal government that officers are agents of the federal government").

Defendant also maintains that First National Bank acted under the control of the Small Business Administration as early as May 2002.   The record shows that First National Bank reported details of its investigation and its civil action against Defendant to the Small Business Administration.   However, the record is devoid of evidence that the Small Business Administration "exercised such coercive power or such significant encouragement that it is responsible" for First National Bank's conduct.   Garlock, 19 F.3d at 443 (quoting Fidelity Fin. Corp. v. Fed. Home Loan Bank, 792 F.2d 1432, 1435 (9th Cir. 1986)).   Accordingly, the Court finds that neither First National Bank nor its officers were agents of the government when they engaged in the allegedly egregious conduct.

Moreover, even assuming that First National Bank was a government agent, the Court finds that its conduct was not so outrageous as to warrant dismissal of the Indictment. Dismissal of an indictment based on government misconduct "is reserved only for the most intolerable government conduct."   United States v. Pardue, 983 F.2d 843, 847 (8th Cir. 1993). The conduct must be so outrageousness as to "shock the conscious" of the Court.   Id.   Although the conduct on which Defendant relies is certainly suspicious and possibly criminal, the Court finds that the conduct was not so egregious or fundamentally unfair that shocks the conscience of the Court.

2.      <u>Grand Jury Testimony</u>

Alternatively, Defendant seeks dismissal of the Indictment because of alleged prosecutorial misconduct during the grand jury proceedings. Specifically, Defendant contends that the Government failed to disclose prior criminal conduct of several key witnesses and knowingly presented false information about Defendant's gambling activities to the grand jury.

The Court will not dismiss the Indictment for errors in grand jury proceedings unless Defendant was prejudiced by the errors. <u>Bank of Nova Scotia v. United States</u>, 487 U.S. 250, 254 (1988). Defendant must show that the Government "substantially influenced" the grand jury so that the Indictment was essentially a product of the Government rather than the will of the grand jury. <u>Id.</u> at 256 (citation omitted).

The Government's failure to disclose potentially exculpatory evidence to the grand jury does not warrant dismissal of the Indictment. <u>See</u> <u>United States v. Williams</u>, 504 U.S. 36, 46-55 (1992). As it relates to the allegedly false testimony, the transcript of the grand jury proceedings does not indicate that the Government manipulated the witness or caused the witness to testify falsely. Furthermore, the Court cannot infer that the Government knew the testimony was false based solely on the fact that another deposition revealed otherwise. Finally, the mere fact that the testimony itself is unreliable is not sufficient to require a dismissal of the Indictment. <u>See</u> <u>Bank of Nova Scotia</u>, 487 U.S. at 261. There is no evidence that the allegedly false testimony about Defendant's gambling activities so compromised the structural protections of the grand jury as to render the proceedings fundamentally unfair.

Defendant will have the safeguards associated with trial to ensure that he will not be improperly convicted. Accordingly, the Court denies Defendant's Motion on this point.[2]

**B.     Motion in Limine**

      1.     <u>Internal Revenue Documents</u>

The Government seeks admission of a letter from the Internal Revenue Service, which certifies that Defendant did not file federal income taxes from 1998 to 2002. This letter is relevant to show that Defendant filed fraudulent tax return documents during that period. In addition, the letter is admissible under Federal Rule of Evidence 803(10).

The Government also seeks to introduce a July 27, 2005, letter from an Internal Revenue Service agent to Defendant, which informed Defendant that he owed $720,153.63 in federal taxes. The letter is relevant to show that Defendant failed to inform his lenders of the tax liability. Moreover, the letter is admissible as a record kept in the regular course of business, as well as a public record. <u>See</u> Fed. R. Evid. 803(6); Fed. R. Evid. 803(8)(B). Accordingly, the Internal Revenue Service documents are admissible.

In his memorandum opposing the Government's Motion in Limine, Defendant alludes to tax returns on which Defendant's son allegedly forged Defendant's signature. The Court will reserve ruling on the admissibility of this evidence until trial.

      2.     <u>Judgments</u>

---

[2] In his memorandum, Defendant requests several other forms of alternative relief, but fails to show that any of the alternative remedies are warranted. The Court therefore denies his requests.

6

The Government seeks to admit judgments against Defendant, which have been filed and sealed in various courts. The judgments are relevant to show Defendant's knowledge of the financial condition of his business, as well as his failure to fully disclose his indebtedness on loan applications. Moreover, they are admissible as public records. See Fed. R. Evid. 803(8)(B). Because the judgments are under seal, the Government need not introduce extrinsic evidence as foundation for the admission of the judgments. See Fed. R. Evid. 902(1).

3.      Certificates of Incorporation and Good Standing

The Government seeks the admission of Certificates of Incorporation and Good Standing from the Minnesota Secretary of State. The Certificates are relevant to show that Defendant owned Borup Ag, Inc. and Gordon's Custom Spraying while the misconduct alleged in the Indictment occurred. Furthermore, the Certificates are admissible as public records. See Fed. R. Evid. 803(8)(B). Because the Certificates are under seal, the Government need not introduce extrinsic evidence as foundation for the admission of the Certificates. See Fed. R. Evid. 902(1).

4.      Extra-Marital Affairs

The Government seeks to exclude evidence of extra-marital affairs of Defendant and his former wife, Debbie Gordon. It relies on Federal Rule of Evidence 403, arguing that the evidence is too prejudicial, misleading, and confusing. In addition, the Government submits that evidence of extra-marital affairs is not probative of the question whether Defendant

submitted fraudulent documents to financial institutions, forged documents, or laundered money.

Defendant contends that evidence of Debbie Gordon's involvement in an extra-marital affair establishes that she is biased against Defendant and explains why she falsely accused Defendant of crimes.   In addition, Defendant maintains that his children knew of the affair but failed to disclose it to him.   According to Defendant, this shows that his family was willing to deceive him to protect each other.   He submits that a crucial component of this case involves such deception, as his son allegedly engaged in forgery and other criminal conduct without Defendant's knowledge.

The Court agrees with the Government to the extent that the proposed evidence does not relate to one of the legal elements of the charges against Defendant.   However, the evidence does indicate a bias against Defendant.   "Proof of bias is almost always relevant because the jury, as finder of fact and weigher or credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony." United States v. Abel, 469 U.S. 45, 52 (1984).   Bias is "the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party."   Id.

Standing alone, the fact that Debbie Gordon had an extra-marital affair does not show bias and is improper character evidence.   However, Defendant contends that Debbie Gordon's involvement in the extra-marital affair, as well as his children's knowledge and cover-up of the

affair, demonstrate that they are willing to abandon and harm him.   The Court concludes that such evidence has probative value in relation to the issue of bias.[3]

Although allegations of marital infidelity may be prejudicial, the Court does not believe that this danger substantially outweighs the probative value of the evidence as it relates to bias. Because the motivations and knowledge of the affair are what is relevant to bias — rather than the fact that the affair occurred — the Court will not allow testimony or evidence concerning the specific details of the alleged affair.   Defendant may elicit testimony or introduce evidence about the alleged affair to explain why Debbie Gordon purportedly lied about Defendant.   In addition, Defendant may use such evidence to demonstrate that Marcus Gordon knew of the alleged affair and prevented Defendant from learning of it.   Any other details are unnecessary, and their probative value is substantially outweighed by the danger of unfair prejudice.   Finally, the Court may give a limiting instruction if appropriate.

5.   Psychiatric Records of Marcus Gordon

The parties agree that evidence relating to Marcus Gordon's psychiatric records, record of his psychiatric treatment, and conversations between Marcus Gordon and his psychotherapist fall under the psychotherapist-patient privilege.   See Jaffee v. Richmond, 518

---

[3] Rule 608 of the Federal Rules of Evidence prohibits use of extrinsic evidence to prove specific instances of a witness's conduct for the purpose of attacking or supporting the witness's credibility. However, the Court may allow inquiry into the specific acts on cross-examination of the witness's character for truthfulness.   Moreover, Rule 608 does not directly address bias.   A party may introduce extrinsic evidence to impeach a witness by showing his or her bias. Abel, 469 U.S. at 51.

U.S. 1, 9-13 (1996).   In addition, the Court finds that evidence regarding Marcus Gordon's psychiatric treatment is irrelevant to the charges in the Indictment.  <u>See</u> Fed. R. Evid. 401.  The evidence is therefore inadmissible.  <u>See</u> Fed. R. Evid. 402.

      6.    <u>OCC Memorandum</u>

The Government contends that the March 2003 memorandum from the OCC contains inadmissible hearsay.   In addition, it submits that the memorandum does not contain lay opinion evidence admissible under Federal Rule of Evidence 701.   Finally, it maintains that the memorandum is irrelevant, as it pertains only to Tongen's banking practices and does not tend to prove or disprove any material fact relating to the charges in the Indictment.

The parties do not indicate whether the author of the memorandum is expected to testify at trial.   Consequently, the Court cannot conclude whether proper foundation for the memorandum can be established or whether an exception to the hearsay rule, such as set forth in Federal Rule of Evidence 803(5), applies.   Accordingly, the Court will reserve ruling on the admissibility of the memorandum until trial.

**CONCLUSION**

Neither the conduct of First National Bank of Mahnomen nor the Government warrant dismissal of the Indictment.   Accordingly, **IT IS HEREBY ORDERED that**:

1.    Defendant's Second Motion to Dismiss the Indictment (Clerk Doc. No. 73) is **DENIED**; and

2.      The Government's Motion in Limine (Clerk Doc. No. 67) is **GRANTED in part** and

**DENIED in part** as set forth above.


Date:   December 12, 2005_____

                                        s/ Paul A. Magnuson_____

                                        Paul A. Magnuson

                                        United States District Court Judge

11